**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PAULINE DALE STONEHILL** | ) | |
| | ) | |
| | ) | |
| **Plaintiff** | ) | Civil Action No. 1: 19-cv-03644-RDM |
| v. | ) | |
| | ) | |
| | ) | |
| **INTERNAL REVENUE SERVICE** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**
**AND COSTS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

• IRS attorney Lew's Claims that Boxes 17 and 83 were lost and that the WNRC Sent only 84 Boxes to the IRS in 2001 were false ....................................................................................2

• The IRS Chief Counsel's Interview with the Director of the WNRC Center confirmed that the IRS statements about the lost boxes made to Stonehill in 2001 and to the District Courts in 2005 and 2007 were false.........................................................................................................3

• Lew and IRS Staff Attempted to prevent the IRS Inspector General (TIGTA) from Learning during its 2014 investigation that Boxes 17 and 83 were not missing before they were sent to the IRS or at the time the IRS returned the boxes to the WNRC in 2009 and 2013...........................................................................................................................................4

• IRS legal Staff attempted to Conceal the return of Boxes 17 and 83 to the WNRC by returning 86 Stonehill boxes to the Records Center over a period of several years (2009-2013) and by claiming two of the "84" boxes returned on May 30, 2013, were duplicate repackaged boxes. .......................................................................................................................4

BACKGROUND OF THIS ACTION.........................................................................8

SUMMARY OF ARGUMENT .......................................................................................... 10

I.    FACTS AND PROCEDURAL HISTORY ............................................................11
    A.  July 10, 1998, FOIA Request...........................................................................11
    B.  March 15, 2001, FOIA Request ......................................................................12
    C.  The Discovery of 8 Boxes of Documents at the Office of the Associate Chief Counsel, Office of International Operations. ........................................................................13
    D.  The Discovery of 86 Boxes of Documents at the Federal Records Center ..........................14
    E.  FOIA Requests for Information about the Discovery and Inspection of Documents in the Associate Chief Counsel's Office and the Federal Records Center .....................................16
        1. McLean 2014 FOIA Request for Documents Related to the Discovery of Boxes in the Federal Records Center............................................................................................ 16
        2. September 28, 2018, FOIA Request....................................................................... 18
II.   THIS PROCEEDING ...........................................................................................19
III.  LEGAL STANDARD ...........................................................................................25

ARGUMENT ...................................................................................................................... 26

I.    MRS. STONEHILL IS ELIGIBLE FOR AN AWARD OF ATTORNEY'S FEES BECAUSE SHE HAS SUBSTANTIALLY PREVAILED .................................................26
    A.  Mrs. Stonehill prevailed because her prosecution of this action was necessary to obtain the information requested in her September 18, 2018, FOIA request....................................27

B.  Mrs. Stonehill Prevailed because the Court Ordered the IRS to produce non-exempt documents relevant to her FOIA Request ........................................................28

C.  Mrs. Stonehill prevailed because she obtained the documents that revealed Boxes 17 and 83 were never lost and are currently at their designated locations at the WNRC. ..............30

II.  MRS. STONEHILL IS ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS.................................................................................................................................31

A.  There is a public benefit derived from the documents sought by Mrs. Stonehill ...............32

B.  There is no commercial benefit to Mrs. Stonehill and Mrs. Stonehill's interest in the records could not have been pursued absent the pro bono representation of counsel........36

C.  The IRS did not have a reasonable basis for withholding Documents requested by Mrs. Stonehill. .............................................................................................................................37

1.  The Records Requested by Mrs. Stonehill were not tax records that required a privacy release.......................................................................................................... 38

2.  Stonehill's FOIA September 28, 2018 FOIA request included a Certification of Identity, a Privacy Release, a Power of Attorney, Tax Information Authorization and a Notice Concerning Fiduciary Relationship ............................................... 40

3.  The IRS Claim that the Stonehill Estate had been closed was Inaccurate ................. 40

III.  MRS. STONEHILL'S ATTORNEY'S FEES ARE REASONABLE .......................................42

# **Table of Authorities**

## Cases

*Am. Immigration Council v. U.S. Dep't of Homeland Security*, 82 F.Supp.3d 396, 407 (D.D.C. 2015) ........ 8, 38

*Blue v. Bureau of Prisons*, 570 F.2d 529 at 534 ((5th Cir. 1978) ................................................. 42

*Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) .................... 25

*Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) ................ 25

*Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 196 (D.C. Cir. 2007) ...... 28

*Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 197 (D.C. Cir. 2007) ...... 30

*Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C.Cir.1981) .............................. 27

*Church of Scientology of California v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981) ..................... 37

*Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) ................................................. 32

*Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C.Cir.2010) ..................................... 26

*Davy v. Central Intelligence Agency*, 456 F.3d at 165 .................................................. 30

*Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) ...................................................... 26

Davy v. CIA, 550 F.3d 1155, 1158 (D.C. Cir. 2008) ..................................................... 31

*Edelman*, 356 F. Supp at 104 citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977) ........................................................................................... 32

*Edmonds v. FBI*, 417 F.3d 1319, 1322–23 (D.C. Cir. 2005) ............................................. 26

*Edmonds v. FBI*, 417 F.3d 1319, 1326–27 (D.C. Cir. 2005) ............................................. 30

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 197 F.Supp.3d 290, 293–94 (D.D.C. 2016) ........ 25

*Elec. Privacy Info. Ctr. v. FBI*, 72 F.Supp.3d 338, 344-45 (D.D.C. 2014) ............................. 30

*Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ......................... 30

*Fenster v. Brown*, 617 F. 2d 740, 744(D.C. Cir. 1979) ................................................. 41

*Gerhard v. Fed. Bureau of Prisons*, 258 F.Supp.3d 159, 165 (D.D.C. 2017) ............................ 25

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ........... 15

*Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) ......................................... 25

*Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)) ..................... 25

*Judicial Watch, Inc. v. FBI*, 522 F.3d 364 at 371 (D.C. Cir. 2008) ................................... 31

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) ................. 44

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F.Supp.2d 225, 237 (D.D.C. 2012) .............. 8, 38

*LaSalle Extension University v. F.T.C.*, 627 F.2d 481, 486 (D.C. Cir. 1980) .......................... 37

*McKinley v. Fed, Hous. Fin. Agency*, 739 F.3d 707 at 711 (D.C. Cir. 2014) ........................... 36

*N.Y.C. Apparel F.Z.E. v. U.S. Customs and Border Prot. Bureau*, 563 F.Supp.2d 217, 221 (D.D.C. 2008) ..... 27

*Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977) .................. 7, 10, 31

*Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977) .................. 37

*Nat'l Sec. Counselors v. Central Intelligence Agency*, 2017 WL 5633091, at *13 (D.D.C. Nov. 21, 2017) ...... 36

*Negley v. FBI*, 818 F.Supp.2d 69, 76 (D.D.C. 2011 ................................................... 38

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985) ................ 44

*People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 130 F.Supp.3d 156, 162 (D.D.C. 2015) . 28

*Reyes v, National Archives and Records Administration*, 356 F.Supp.3d at 166 ( D.D.C. 2018) ......... 37

*Reyes v, National Archives and Records Administration*, 356 F.Supp.3d at 166 (D.D.C. 2018) .......... 37

*Reyes v. National Archives and Records Administration*, 356 F.Supp.3d 155 at 164 (D.D.C. 2018) ...............32

<u>*Stonehill v. Department of Justice Tax Division,*</u> (02/10/22) Civ. 1:19-cv-03770 (D.D.C)................................33

*Trotter v. Center for Medicare and Medicaid Services,* 2022 WL 951377 at 2 (D.D.C. 2022) ........................31

*United States v. Stonehill*, 650 Fed. 3d 415 (9th Cir. 2011) .......................................................................36

*United States v. Stonehill*, No.65-127 (OMP) (C.D. Cal.) (filed August 28, 2001)............................................14

*Wadelton v. Dep't of State*, No. 13-CV-412, 2018 WL 4705793, at *4 (D.D.C. Sept. 30, 2018).......................32

*Williams v. FBI*, 17 F.Supp.2d 6, 9 (D.D.C. 1997) ..........................................................................................36

## INTRODUCTION

On July 7, 2022, the Court entered a Minute Order encouraging the parties to make a good faith effort to resolve the remaining issue in this case pertaining to the Plaintiff's request for attorney's fees and costs. The Court Ordered the parties to meet and confer and attempt to resolve or limit the scope of their dispute regarding attorney's fees prior to filing Plaintiff's motion for attorney's fees on September 1, 2022. The Parties met and conferred on August 5, 2022 but were unable to resolve or narrow the issues related to the Plaintiff's entitlement to attorney's fees and costs.[1]

Mrs. Stonehill filed this FOIA action to obtain documents about the loss of two boxes of IRS documents related to the illegal raids that were conducted in 1962 on 17 businesses in the Philippines owned by her husband, Harry S. Stonehill. The Plaintiff believes that filing *this* motion is necessary because the Court needs to know after three years of FOIA litigation, that the documents released to Mrs. Stonehill in the past several months unequivocally show that the IRS has known for more than two decades that Boxes 17 and 83 have never been lost contrary to the government's representations. The documents released recently, show that Boxes 17 and 83 were sent from the Washington National Records Center ("WNRC") to the IRS in 2001 as part of 86 boxes of Stonehill documents which were responsive to Mr. Stonehill's July 10, 1998,

---

[1] Pursuant to the Court's instructions, Plaintiff offered a fair discount to reduce $196,087 incurred in attorney fees as of August 5, 2022, by 30% or by approximately $58,826 simply to avoid the parties having to brief the issue and consume the Court's time. On August 9, 2022, the Defendant rejected the offer but expressed an interest in proposing a counteroffer. Given the delays already, given the rejection of a more than generous discount, and in light of the fact that in the interim, further review of documents revealed that the Government had been lying repeatedly over the years about the existence of two key boxes of documents (purportedly "lost" that were never lost-as the government internally documents), this motion became necessary and important to file. Subsequently, the undersigned counsel informed the Defendant on August 11, 2022, that Mrs. Stonehill was withdrawing her offer to reduce attorney's fees by 30%.

FOIA.[2] The IRS returned boxes 17 and 83 to the WNRC between 2009 and 2013 where they are currently stored in their original locations.

The documents released in this action show a pattern of extraordinary government misconduct which began in 1998 when the IRS claimed that only 5 pages of Stonehill documents could be located at the time Stonehill's original FOIA request for the documents was made. After the IRS admitted that 8 boxes of documents were stored at the Associate Chief Counsel's Office and 86 boxes were stored at the Washington National Records Center ("WNRC"), the IRS reported to Stonehill on November 2, 2002, at the end of the IRS review of the "86 boxes" of documents by IRS attorneys Richard Fultz ("Fultz") and May J. Lew ("Lew"), that Boxes 17 and 83 were missing. The IRS repeated the false claim that Boxes 17 and 83 had been lost to the District Courts in the Rule 60(b) proceedings on June 5, 2005, and in the IRS FOIA litigation on March 16, 2007.[3] The unredacted documents released in this proceeding between July 1, 2021, and October 29, 2021[4] show that the IRS returned box 83 to the Records Center on 12/8/2009, shortly after the March 6, 2009, D.C. Court of Appeals decision in the IRS FOIA litigation; the IRS returned Box 17 to the Records Center on 5/15/2013, two years after the Ninth Circuit Court of Appeals decision affirming the District Court's decision denying Stonehill's Rule 60(b)(6) motion.

- **IRS attorney Lew's Claims that Boxes 17 and 83 were lost and that the WNRC Sent only 84 Boxes to the IRS in 2001 were false**

In Emails exchanged between IRS legal staff in December, 2003, discussing the events surrounding the discovery of the "84" boxes of Stonehill documents, IRS attorney Mae J. Lew ("Lew") claimed in early July, 2001that "The IRS discovered , and the records center concurred,

---

[2] After the undersigned counsel's discovery that boxes responsive to the request were stored in the Associate Chief Counsel's Office, the 1998 FOIA request was refiled on March 15, 2001.
[3] This claim was also repeated in numerous pleadings filed by the government in both proceedings.
[4] 119 pages were released in full, 65 pages were withheld in part, and 909 pages were withheld in full.

that the total boxes with accession number 58-81-24 (the Stonehill boxes), actually total 84 boxes (the records center did not have, and did not send to us, boxes 17 and 83.)"  and "the total number of boxes sent to us by the records center was 84, not 86." [5]  In her telephone interview with Special Agent Davids (TIGYA) on January 23, 2014, Lew also claimed that "the records center acknowledged that they only had 84 boxes at the time and that they were only able to send 84."[6] She repeated that claim during her meeting with Davids the following day.[7]  Those statements were false.[8]

- **The IRS Chief Counsel's Interview with the Director of the WNRC Center confirmed that the IRS statements about the lost boxes made to Stonehill in 2001 and to the District Courts in 2005 and 2007 were false**

In September 2021, Christopher Pinkey, WNRC Acting Director, informed Helene Newsome ("Newsome"), IRS Office of Chief Counsel, that Boxes 17 and 83, as well as every other box in the 86 records set, "were stored in their appropriate locations at the WNRC" and that "the WNTC has no hard copy record, or record in ARCIS, indicating that Boxes 17 and 83 were ever missing."[9]  An Excel spreadsheet prepared by Pinkey for Newsome to identify the dates of IRS refiles (or returns) confirm that the IRS had possession of the missing boxes 17 and 83 between 2001 and 2013 when the boxes were returned to the WNRC:

> **Box 83** was returned on 12/8/2009, shortly after the March 6, 2009 D.C. Court of Appeals decision in the IRS FOIA litigation.
> **Box 83** was returned a second time on 5/30/2013, at the same time Box 17 was returned.[10]

---

[5] (STON00743) Exhibit 1(a)
[6] STONO1019- Exhibit 1(b)
[7] STONO1017-1018  Exhibit 1 (c)
[8]   Second Declaration of Helene Newsome, March 31, 2022, pp. 15-19 at par. 71  Exhibit 2; see also Excel Sheet prepared by WNRC,  STONO1086-1089 Exhibit 1(d)
[9] Newsome Second Declaration, March 31, 2022 at par. 76. Exhibit 2
[10] Exhibit 1(d). Several of the boxes were returned to the WNRC twice. Although the explanation for duplicate returns is not clear, it appears to reflect activity by Department of Justice Tax Division lawyers in the Rule 60(b)(6) proceeding who were also requesting access to the boxes at the WNRC. (STONO1090-1092) Exhibit 1 (e).  See also Exhibit 1(j), 8/3/2015 email from C. Pinkey to G. Lassiter.

- **Lew and IRS Staff Attempted to prevent the IRS Inspector General (TIGTA) from Learning during its 2014 investigation that Boxes 17 and 83 were not missing before they were sent to the IRS or at the time the IRS returned the boxes to the WNRC in 2009 and 2013**

On January 23, 2014, Lew received a call from Special Agent John Davids ("Davids"), the Agent in charge of Treasury Inspector General for Tax Administration's ("TIGTA") investigation of the lost Stonehill boxes 17 and 83.[11] Lew informed Davids, during the telephone call and during a meeting with Davids the following day,[12] that *only 84 boxes, not 86 boxes,* had been received from the Records Center in 2001 ("the total number of boxes sent to us by the records center was 84, not 86."). She also informed Davids that "**The records center acknowledged that they only had 84 boxes at that time and so they were only able to send 84." (STONO1019)** Those statements were false.

After her call with Davids, Lew sent an email to IRS legal staff Tonuzi and Sterner, stating:

> we're fairly confident that the matter **will be concluded <u>without incident</u>. However, we are not sure if TIGTA will decide to question the records center and whether it is advisable to provide the records center with a head's up about this matter**. We are seeking your advice on that point because **we are not sure who our contact at the records center is….**" *Id. (emphasis added).*

Tonuzi recommended that they let "TIGTA conduct their investigation" and Sterner advised Lew "**not to contact the records center, but just to answer TIGTA's questions and let them pursue the investigation as they see fit." (STONO1018). On its face, this appears to be smoking gun fraud on the court material.**

- **IRS legal Staff attempted to Conceal the return of Boxes 17 and 83 to the WNRC by returning 86 Stonehill boxes to the Records Center over a period of several**

---

[11] The Investigation of the lost boxes was requested by Senator Grassley. STONO1019 (Exhibit 1(b).
[12] STONO1017-1019Exhibit 1(c).

**years (2009-2013)[13] and by claiming two of the "84" boxes returned on May 30, 2013, were duplicate repackaged boxes.**

On January 24, 2014, prior to Lew's meeting with Special Agent Davids, IRS paralegal Natalie McKinney ("McKinney") responded to Lew's request for confirmation the "84 boxes" (not 86 boxes) had been redelivered to the WNRC. McKinney reported to Lew that the IRS only received eighty-four (84) boxes from NARA, Suitland Records Center in 2001 and that on May 30, 2013, eight-six (86) boxes were picked up by the Department of Justice Tax Division and returned to the Records Center. McKinney explained that 86 boxes were picked up because two boxes "fell apart" because they were "damaged and overstuffed" and that the two boxes were repackaged into 4 boxes.[14] The Excel Sheet confirms that Box 22 was returned in two boxes on 5/30/2013 and that Box 77 was also returned in two boxes on 5/15/2013 and on 5/30/2013. Boxes 74 and 76, however, were not returned in 2013[15] but were replaced by "lost" Boxes 17 and 83. McKinney's statement that 86 boxes were picked up in 2013 was misleading but true; her claim that the IRS only received 84 boxes in 2001 was false.[16]

The documents that Mrs. Stonehill sought and obtained in this FOIA proceeding reveal an extraordinary and disturbing level of IRS misconduct which impacted both Mrs. Stonehill and the Courts during the Rule 60(b)(6) proceedings and in the FOIA litigation in 2009. These documents vividly illustrate how the IRS utilized the FOIA as a tool to prevent disclosure of documents relevant to other government Stonehill litigation and to cover up government misconduct. The documents disclosed in this proceeding are essentially about a government

---

[13] Exhibit 1(d); Box 36 was returned a second time in 1/18/2017 several weeks before the IRS denied Bethany McLean's 2014 FOIA request based on its claim that Pauline Dale Stonehill did not have the authority to act as executor for Mr. Harry Stonehill. Exhibit 1(d) at STONO1089
[14] STONOO119-0120. Exhibit 1 (f)
[15] Boxes 74 and 76 had been returned three years earlier in 2010. Exhibit 1(d)
[16] Although Box 4 was included in the boxes of Stonehill documents produced to Mr. Stonehill for inspection, the Excel sheet indicates that it was never returned to the WNRC. Exhibit 1(d)

"cover-up" of a "cover up." The documents in the missing Stonehill Box 17 contain the "Chief Counsel Criminal Division notes and papers for the review of the Stonehill and Brooks cases in preparation of the Chief Counsel's memorandum dated May 20, 1966."[17] The May 20, 1966, memorandum, prepared by IRS Chief Counsel Lester Uretz, described the IRS investigation of Stonehill's allegations concerning wiretapping and the illegal search and seizure by the N.B.I. and the alleged participation by United States personnel. As part of this coverup, IRS attorneys submitted false declarations in two different judicial proceedings which confirmed the loss of Boxes 17 and 83 at a time when the IRS knew those declarations were false.

In 2014, IRS lawyers also knowingly made false statements to the IRS Treasury Inspector General for Tax Administration during its investigation of the missing boxes. The IRS had good reason not to suggest to Davids that he contact the WNRC. If Davids had contacted the Records Center, he would have learned what Newsome had learned in 2021, as reported in her Declaration (par's 71-76) *e.g.* Boxes 17 and 83 were never missing from the Records Center and that eight months before the Davids interview, the IRS had already returned the missing boxes to the IRS. Davids would have also learned that Lew's statement that the Records Center had informed her that it had only sent 84 boxes in 2001 because Boxes 17 and 83 were missing was false.

There is a great public interest in the extraordinary misconduct revealed in the documents requested and obtained by Mrs. Stonehill in this proceeding. This misconduct undermined the stated purpose of the FOIA which is to "encourage the maximum feasible public access to government information" and to "facilitate citizen access to the courts to vindicate their statutory

---

[17] Exhibit 3. According to handwritten notations on the IRS General Index, Box 17 was originally part of Box 53, which was described as containing "Chief Counsel Criminal Tax Division attorney notes and papers for the review of the Stonehill and Brooks cases in preparation of the Chief Counsel's memorandum dated May 20, 1966."

rights." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)  It also reflects a massive fraud on the court, in what ironically were already fraud on the court proceedings—where this vital evidence was withheld. It is, respectfully, breathtaking—when done by any party, but even more so when committed by our own Government. In the context of Plaintiff's request for attorney's fees, the documents released by the IRS on October 29, 2001, also reveal that the last year of this proceeding was unnecessary. The IRS allowed this proceeding to continue for almost one year after the IRS August 2021 interview with the Director of the WNRC before submitting a Declaration on March 31, 2022, which confirmed that Boxes 17 and 83 were *not* missing and were *never* missing from the Records Center; this delay resulted in an additional waste of the Plaintiff's time and the Court's time.

More importantly, this entire proceeding could have been avoided if the IRS had been forthright in responding to the FOIA request originally filed on behalf of Mrs. Stonehill by investigative journalist Bethany McLean in 2014 and by the undersigned counsel on behalf of Mrs. Stonehill in 2018. The documents finally released by the defendant, reveal the IRS return of the missing boxes in 2009 and in 2013, one year before McLean filed her 2014 FOIA. Instead of being forthright with McLean, the IRS requested 11 extensions over a period of almost 4 years;[18] at the end of the four-year period, the IRS denied McLean's FOIA request because they claimed Mrs. Stonehill, the coexecutor and administrator of her husband's estate, did not have authority under the privacy rules to have access to *documents describing the events surrounding the loss of two boxes of IRS Stonehill documents.* (Complaint Ex. 9(b))

The IRS also knew that boxes 17 and 83 were not lost in 2018 when Mrs. Stonehill filed her second FOIA request for the same information requested by McLean, which was also denied

---

[18] Exhibit 1(g)  STON00316

by the IRS, without providing any colorable or reasonable basis for refusing to disclose the information. Complaint Ex. 10(b); *see Davy*, 550 F.3d at 1163; *see also Am. Immigration Council v. U.S. Dep't of Homeland Security*, 82 F.Supp.3d 396, 407 (D.D.C. 2015); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F.Supp.2d 225, 237 (D.D.C. 2012).

The documents in Boxes 17 and 83 were requested by Harry Stonehill while he was alive on July 10, 1998. The IRS disclosure officer, Stephen Flesner falsely claimed that only 5 documents could be located under "our jurisdiction responsive to your request."[19] Flesner delayed the production of documents initially for 3 years, and then, beginning in 2001, after he disclosed that the documents were located in the Associate Chief Counsel's Office, the IRS falsely claimed for the next 20 years that Boxes 17 and 83 had been lost. Harry Stonehill died in 2002 and Mrs. Stonehill is now 85 and in very poor health. It is unlikely that Mrs. Stonehill will see the final resolution of her efforts to obtain documents about the Government's misconduct in the illegal raids on her husband's businesses in 1962 or its continued misconduct during the Rule 60(b)(6) proceedings and FOIA litigation between 2000 and 2011. To obtain the documents originally requested in 1998, will require still additional time and resources and it is unlikely Mrs. Stonehill will ever learn the full extent of the government's misconduct during her lifetime.

In light of the above (and the long history of cover up here), we would request that the Court consider holding a hearing on these issues and let the people involved account to the Court (and Mrs. Stonehill) for what has happened.

## BACKGROUND OF THIS ACTION

In this action, the Plaintiff, Pauline Dale Stonehill ("Mrs. Stonehill"[20]), sought to obtain records under the Freedom of Information Act, 5 U.S.C. § 552, pertaining to the Internal

---

[19] Complaint Ex. 1(a); Complaint par. 40. *See also* Heggestad Declaration, Attachment 1 at
[20] Pauline Stonehill is the Co-Executor and Administrator of the Estate of Harry S. Stonehill ("Stonehill").

Revenue Service ("IRS") discovery and review of 94 boxes of documents related to the Government's decades old investigation and prosecution of her husband Harry S. Stonehill ("Stonehill"). Although those proceedings economically destroyed Stonehill, the undersigned counsel has continued to represent Mrs. Stonehill in the FOIA litigation *pro* bono for the past 4 years.[21]

The documents contained in the 94 IRS Stonehill boxes, which the IRS "discovered" nearly two decades ago include: (1) eight boxes of Stonehill documents kept in the IRS Office of the Associate Chief Counsel, International Operations Branch; and (2) an additional 86 boxes of Stonehill documents stored in a Federal Records Center. The plaintiff's FOIA request *also* sought "[a]ll records or correspondence related to the discovery that Boxes 17 and 83 were missing from the Federal Records Center."

In the FOIA proceeding below, the IRS claimed that Mrs. Stonehill did not have the authority to access IRS records pertaining to her husband, although Mrs. Stonehill's request included a Certification of Identity, a Privacy Release, a Power of Attorney, Tax Information Authorization and a Notice Concerning Fiduciary Relationship from Pauline Stonehill, Mr. Stonehill's wife, beneficiary and Co-Executor and Co-administrator of his estate.[22] Mrs. Stonehill appealed the decision and attached a letter from the co-executor of the Estate confirming that the Estate had not been closed and that it remained open under Swiss law.[23] The IRS did not respond to Mrs. Stonehill's appeal. One year later, after Mrs. Stonehill initiated this

---

[21] The undersigned counsel began representing Mr. Stonehill and his estate on a contingent fee basis, beginning in 1996 and continuing through 2011, when the Ninth Circuit denied Stonehill's Rule 60(b)(6) motion.  See Heggestad Declaration Attachment 1 at

[22] Comp. par. 95. Answer par. 95. Complaint Exhibit 10(a). Although the September 28, 2018 FOIA request did "not involve any privacy rights concerning Stonehill's tax returns or tax return information, under 26 U.S.C. 1603," Stonehill's FOIA request included documents which authorized Mrs. Stonehill's representatives to have access to the documents that had been requested.

[23] Compl. Ex. 10(c)

action, the IRS moved to dismiss this action on the ground that the Plaintiff's suit was "barred under the doctrine of res judicata." Dkt. 11-1 at 3.

The Court denied the defendant's motion to dismiss in its Memorandum Opinion and Order filed March 22, 2021. Dkt. 17. During the following sixteen months, the IRS reported that it had located 1,093 pages of responsive records;119 pages were released in full, 65 pages were withheld in part, and 909 pages were withheld in full. On July 6, 2022, the parties stipulated that the IRS search for documents was adequate and that the exemptions claimed by the IRS were not at issue in this case. The only remaining issue is whether Mrs. Stonehill is eligible and entitled to attorney's fees and costs under the FOIA, 5 U.S.C. § 552(a)(4)(E) and whether the attorney's fees requested by the Plaintiff are reasonable.

## SUMMARY OF ARGUMENT

For the reasons set forth below, the Court should grant Plaintiff's motion. Plaintiff is *eligible* for attorney's fees because she has substantially prevailed in this litigation. Mrs. Stonehill is also *entitled* to attorney's fees because:

- there is a public benefit derived from the documents sought in this case because the IRS conduct during the FOIA proceedings undermined the stated purpose of the FOIA which is to "encourage the maximum feasible public access to government information" and to "facilitate citizen access to the courts to vindicate their statutory rights." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977); the information sought involves questions about the government's integrity that affect public confidence and the government's utilization of the FOIA process to prevent access to privately sought information for those members of the public who do not have the resources to participate in the FOIA process over a period of years or to enforce their rights through litigation;

- there is no commercial benefit to Mrs. Stonehill;

-  Mrs. Stonehill's interest in the records is to shed light on the Government's use of the FOIA as a means of suppressing and delaying the production of evidence revealing government misconduct; and

- the IRS had no colorable or reasonable basis for withholding documents from Mrs. Stonehill which related to the Government's discovery and subsequent "purported" loss of Stonehill related documents.

Finally, the work performed by the undersigned attorney on behalf of Mrs. Stonehill during the past 3 years was necessary to obtain responsive documents and the attorney's fees for time expended to perform that work are reasonable. Declaration of Robert E. Heggestad Att. 1.

## I.      FACTS AND PROCEDURAL HISTORY

### A.   <u>July 10, 1998, FOIA Request</u>

On July 10, 1998, Stonehill filed an FOIA Request with the IRS seeking "all records, files, hearing transcripts, notes or memoranda of meetings or telephone conversations, and other data in your possession, custody, control pertaining to Robert P. Brooks [and] Harry S. Stonehill[.]" On December 11, 1998, the IRS produced **five documents.** According to IRS Disclosure Officer Steven Flesner ("Flesner"), these documents were located following "a thorough search of all available records under the jurisdiction of the Assistant Commissioner (International)."[24]  Flesner advised Stonehill's counsel on January 6, 1999, that other than the few documents that had been provided in full, there "were no other documents under our jurisdiction responsive to your request" and if additional documents "exist, they are not in [IRS] possession at this time."[25]  Flesner recommended that because "this case was litigated by the Department of Justice for a number of years…. further correspondence concerning these records" should be directed "to the Department of Justice under a Freedom of Information Act request."[26] On January 8, 1999, Stonehill submitted a new FOIA request to DOJ which included the related correspondence from Flesner. On January 26, the FOIA request was forwarded by the

---

[24] Letter from S. Flesner to R. Heggestad (Dec. 11, 1998), Plaintiff's Complaint, ("Complaint") Ex. 1(a).
[25] Letter from S. Flesner to R. Heggestad (January 6, 1999), Complaint, Ex. 1(b).
[26] *Id.*

Justice Management Division to the Executive Office for U.S. Attorneys. On March 5, 1999, DOJ Senior Counsel for the FOIA/PA Unit for the EOUSA responded that the requested Stonehill records had been destroyed.[27]

On July 31, 1999, Stonehill appealed the IRS decision claiming no responsive documents could not be located. On October 29, 1999 IRS Chief of Disclosure Litigation Donald Squires ("Squires") denied Stonehill's appeal stating that "to the best of our knowledge, these documents could not be located, and through discussions with appropriate Service employees, we believe that these documents indeed could not be found."[28] Mr. Squire's statement and the statement by Mr. Flesner on  IRS January 6, 1999 that there were no responsive documents under IRS jurisdiction were false or at best intentionally misleading and they delayed Stonehill's search for responsive documents for approximately three years.

### B. March 15, 2001, FOIA Request

On November 30, 2000, the Tax Division and the FBI produced approximately 1, 846 documents in response to FOIA litigation filed by the Plaintiff.[29] These documents included several hundred documents authored by the Chief Counsel for IRS International Operations Branch and by IRS agents involved in the Stonehill case from 1960 through 1976. [30] On March 15, 2001, Plaintiff's counsel questioned Flesner to determine why the same documents had not been produced in response to Plaintiff's 1998 FOIA request. Flesner, who was no longer an IRS disclosure officer, admitted that documents responsive to the 1998 FOIA request were, in fact, available and could be found at the Office of the Associate Chief Counsel, Office of International Operations.[31]

---

[27] Letter from B. Gay to R. Heggestad (March 5, 1999), Complaint Ex. 1(c).
[28] Letter from D. Squires to R. Heggestad (October 29, 1999) Complaint Ex. 1(d).
[29] Stonehill v. IRS, Declaration of R. Heggestad (9/07/2007)  Ex. 4, par. 9
[30] *id.*
[31] Ex. 4, par. 10; *See also* Heggestad Declaration, Attachment I

On March 15, 2001, following his conversation with Fletcher, Plaintiff's counsel wrote to Catherine Campell ("Campell"), the Manager of the IRS Headquarters Disclosure Office, and asked her to conduct a new search for documents responsive to the 1998 FOIA request. He informed Campell (based on his conversation with Flesner) that "the IRS documents relating to the taxpayers (other than the Collection Administrative file), which would be responsive to the 1998 FOIA request, can be located and should be readily accessible in the Office of the Associate Chief Counsel, International Operations Branch."[32]

### C.   The Discovery of 8 Boxes of Documents at the Office of the Associate Chief Counsel, Office of International Operations.

On May 18, 2001, more than 3 months after the briefing on Stonehill's initial Rule 60(b) motion had been completed, IRS Tax Specialist Carroll Field ("Field") reported that eight boxes of documents relating to the Stonehill case had been located in the Associate Chief Counsel's Office.[33]  Those documents were made available for Plaintiff's inspection between July 23, 2001 and October 1, 2001.[34] In her December 4, 2003 email to Fultz and Tax Division attorney Charles Duffy ("Duffy"), IRS attorney Mae J. Lew described the circumstances surrounding her discovery of the 86 boxes during her preparation of responding to an FOIA request, dated March 25 (sic), 2001, from Robert Heggestad:

> In June 2001, I came upon Form 135 (Records Transmittal and Receipt), dated February 12, 1981….which reflects that 86 boxes, with accession number "58-81-24" were sent by the IRS to the Washington National Records Center, Suitland , Maryland, 1981….On August 8, 2001, Richard Fultz and I went to the records center to see the boxes and view a sample of contents of about 7 or 8 boxes each to determine whether there may be any documents responsive to the FOIA request. We found that the boxes we reviewed did contain documents that may be considered responsive." STON00744-745 (Ex. 1(a).

---

[32] Complaint Ex. 4(a).
[33] Exhibit 4, par. 11-12.
[34] November 26, 2002 Final IRS Response to R. Heggestad from C. Field, Exhibit 5 at 5.

D.  **The Discovery of 86 Boxes of Documents at the Federal Records Center**

On May 29, 2001, shortly after Stonehill learned that the eight boxes of documents had been located in the Associate Chief Counsels Office, Stonehill filed a motion to stay the Rule 60(b) proceeding and to order the immediate production of; (1) the eight boxes of IRS documents discovered in the Chief Counsel's Office; and (2) other Stonehill files that the Government had discovered in a Criminal Division safe (the Criminal Division subsequently claimed  the files in the safe were lost, one year after Stonehill filed an FOIA request for the documents). The Government opposed Stonehill's motion to stay, arguing that the District Court lacked jurisdiction to intervene in *any* of Stonehill's FOIA disputes.[35]  The Government also argued that the Rule 60(b) litigation was not an appropriate forum for FOIA litigation.[36]

The Government claimed that a stay in the Rule 60(b)(6) litigation would have been appropriate, had it been requested and obtained several months earlier "when the taxpayers knew they would be getting more documents."[37] At the time the Government made this statement, it either knew or shortly thereafter knew, that 86 boxes of additional documents had been discovered at the Federal Records Center.[38] The Government withheld this information from Stonehill and from the Court until after the Court had entered its August 28, 2001 order[39] denying both Stonehill's Rule 60(b) motion and the motion to stay. Stonehill filed a Notice of Appeal with the Ninth Circuit Court of appeals on September 25, 2001.

---

[35] June 5 2001 Memorandum for the United States Opposing Defendant's Motion to Stay, *United States v. Stonehill*, Ex. 8 at p. 2.
[36] Id. at p. 3-4.
[37] Id. at 3.
[38] Four years later Richard Fultz admitted that the boxes were located in June, 2001. U.S. v. Stonehill, Fultz June 5, 2005 affidavit, Complaint Ex. 6(a) page 2, par. 4. The documents produced in this proceeding also confirm that Lew learned that there were additional 86 boxes of Stonehill documents located at the WNRC in June 2001. Exhibit 1(h) Email from M. Lew to R. Fultz "…in June 2001 I came upon Form 135 (records Transmittal and Receipt) dated February 12, 1981…Form 135…reflects that 86 boxes…were sent by the IRS to the Washington National Records Center…in 1981."
[39] Order, *United States v. Stonehill*, No.65-127 (OMP) (C.D. Cal.) (filed August 28, 2001).

On September 28, 2001, after the District Court no longer had jurisdiction, and during the completion of Plaintiff's review of the eight boxes of IRS documents "discovered" at the Associate Chief Counsel's Office, IRS Disclosure Officer Carole Field reported that an additional eighty-six boxes of documents, responsive to the July 10, 1998 FOIA request, had been located at the Federal Records Center.[40] Fultz delayed notifying Stonehill's counsel that an additional "86 boxes" had been located until October 16, 2001.[41] Because both Field and Fultz delayed notifying Stonehill of the discovery of 86 additional boxes until after Stonehill's Notice of Appeal had been filed, Stonehill could not file a motion with the District Court to reconsider its decision denying Stonehill's motion to stay the proceeding.[42] This delayed the Rule 60(b)(6) litigation for an additional one and one-half years until December 19, 2002 when the Ninth Circuit reversed and remanded the case back to the District Court.[43]

On November 2, 2002, after the completion of the review of the 86 IRS Stonehill boxes and shortly before oral argument in the Ninth Circuit, Field notified Stonehill's counsel that boxes 17 and 83 were "missing from the Federal Records Center."[44]

---

[40] Following her conversation with the undersigned counsel, Feld reported on October 4, 2001 that a letter would be sent from the Office of Chief Counsel regarding the "boxes of documents which are stored at the Federal Records Center in Suitland, Maryland."  Exhibit 1 (i).

[41] Complaint Ex. 6(b)

[42] *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam)....

[43] The Ninth Circuit ruled that "The District court abused its discretion when it ruled to vacate while Stonehill and Brooks were still seeking potentially relevant evidence. Since the district court's ruling, Stonehill and Brooks have obtained more documents that may substantially bolster their case that the government committed fraud on the court."

[44] Letter from C. Field to R. Heggestad (November 14, 2002), Complaint Ex. 8(a)

E. **FOIA Requests for Information about the Discovery and Inspection of Documents in the Associate Chief Counsel's Office and the Federal Records Center**

1. **McLean 2014 FOIA Request for Documents Related to the Discovery of Boxes in the Federal Records Center**

On October 2, 2000, the Tax Division proposed a settlement agreement which would require Stonehill to dismiss the FOIA lawsuit in exchange for the Tax Division reprocessing Stonehill's 1979 FOIA request. The Government agreed that Stonehill could file new FOIA requests for documents in the Stonehill Tax Division case files 7 years after the complaint was dismissed. On April 10, 2006, during the Rule 60(b) proceedings and the IRS-FOIA litigation, Stonehill filed a new FOIA request with the IRS for copies of the transcripts of IRS Special Agent Sterling Powers deposition.[45] Brittney Campbell ("Campbell"), the Tax Division Attorney representing the IRS in the FOIA litigation informed Stonehill's counsel on May 2, 2007 that the IRS had not conducted a search for the transcripts because an agreement had not been reached on search costs. Campbell informed Stonehill's counsel that the Department of Justice would be willing to release the transcripts if Stonehill and his representatives agreed not to file any FOIA requests related to Stonehill or his estate with the Tax Division or the IRS for a period of seven years. On May 9, 2007, David Hubbert, Tax Division Chief, Civil Trial Section, confirmed the terms of the settlement agreement which provided that the Tax Division would provide a copy of the Powers' deposition transcript if Stonehill's estate and his counsel would agree not to file any FOIA request with the Tax Division or the IRS related in any way to Stonehill for seven additional years.[46] That agreement expired on May 9, 2014. The Tax Division and the IRS agreements to provide Stonehill documents which required Stonehill to agree not to file any

---

[45] Letter from R. Heggestad to J. McLean (April 10, 2006) Compl. Ex. 7(a).
[46] Letter from D. Hubbert to R. Heggestad (May 9, 2007) Compl. Ex. 7(b).

FOIA requests for Stonehill documents for a combined period of 14 years, delayed discovery of the existence of Boxes 17 and 83 until 2014.

On July 10, 2014, approximately two months after the second agreement expired, Bethany McLean ("McLean"), an investigative journalist, filed an FOIA request on behalf of Mrs. Stonehill for all records and correspondence relating to the storage and access to 86 boxes of IRS Stonehill records located at the Washington Records Center in Suitland Maryland. The IRS requested 11 extensions for "additional time to search for, collect, and review responsive records from other locations."[47] On March 31, 2017, almost 3 years after her request was filed, the IRS Disclosure Manager Sharisse Tompkins ("Tompkins"), requested that McLean provide the IRS with evidence that Mrs. Stonehill had the authority to act as executor for her husband Harry Stonehill, including a copy of the will, a testamentary letter, and/or other authorizing document from the court where the will is being probated."[48] On April 21, 2017, McLean provided Tompkins with Mrs. Stonehill's signed Form 56 and with a copy of Mr. Stonehill's will appointing Mrs. Stonehill as Co-Executor. On May 10, 2017, Tompkins issued a final response denying McLean's July10, 2014 FOIA request:[49]

> Thank you for the response you provided in regard to substantiation of the disclosure authorizations attached to your requests. Unfortunately, it does not provide sufficient information to support the statements made on the Form 56, Notice Concerning Fiduciary Relationship. Please note the executor/fiduciary relationships terminate. Since the authority to re-disclose as provided by Form 56 is not established, the authority to receive tax information as provided by Form 8821, Tax Information Authorization cannot be honored.

---

[47] STONOO316
[48] Letter from P. S. Tompkins, IRS Disclosure Manager, to B. McLean (March 31, 2017), Complaint Ex. 9(a).
[49] Letter from P. S. Tompkins to B. McLean (May 10, 2017), Complaint  Ex. 9 (b).

On August 2, 2017, Mclean appealed the May 10, 2017 final response.[50]  On August 28,

2017, T. Carrilo, ("Carrilo") Appeals Team Manager, responded to McLean's August 2, 2017

Appeal request stating:

> Based on the facts and circumstances, a standard executor/fiduciary relationship would
> have a finite term. Once the estate/probate is closed, the authority and relationship
> would terminate. We have found no information to determine if the estate/probate in this
> matter remains open. Whether the matter is open or closed, none of the requested
> documents may be disclosed without complete and proper authorization. The
> documentation on file did not provide sufficient information to support the authority for
> any current appropriate recognized fiduciary relationship.[51]

Carrilo concluded:

> Your Appeal request does not represent a proper administrative appeal within the
> purview of the FOIA process. Since there is no jurisdiction for any administrative appeal
> under these circumstances, we are closing our file in regard to this matter. Id.

### 2.  September 28, 2018, FOIA Request

On September 28, 2018, the undersigned counsel filed a new FOIA Request on behalf of

Mrs. Stonehill, for all records and correspondence discussing or related to the discovery, review

and transfer of Stonehill documents in 2001.[52] On October 19, 2018, Tompkins issued a final

response denying Mrs. Stonehill's September 28, 2018 FOIA (case number F19283-0060):

> Tax records are confidential and may not be disclosed unless specifically authorized by
> law. The information you provided does not provide adequate verification of your right
> to access the records of Mr. Stonehill. Unfortunately, there was no information provided
> to support the statements made on Form 56, Notice Concerning Fiduciary Relationship.
> Please note the executor/fiduciary relationship has a finite term. Once the estate/probate
> is closed, the authorities and relationship terminate. Since the authority to re-disclose as
> provided by Form 56 is not established, the authority to receive tax information as
> provided by Form 8821, Tax Information Authorization, cannot be honored.[53]

---

[50] Mclean's August 2, 2017 Appeal included: (1) the September 1, 2005 letter from Jacques Meuwly, the
original Co-Executor, notifying the Court and Mrs. Stonehill (his co-executor) that he was resigning his
position as co-executor; (2) the August 1, 2017 confirmation from Mrs. Stonehill that she has never
closed the Stonehill Estate and continued to serve as co-executor and administrator; and (3) the June 26,
2001 Addendum to the last Will and Testament of Harry S. Stonehill.
[51] Letter from T. Carrilo to B. McLean (August 28, 2017), Complaint Ex. 9 (c).
[52] Letter from R. Heggestad re IRS FOIA Request (September 28, 2018), Complaint Ex. 10 (a).
[53] Letter from S. Tompkins to R. Heggestad (October 19, 2018), Complaint Ex. 10(b).

On December 12, 2018, the undersigned counsel appealed Tompkin's final response denying Plaintiff's September 28, 2018, FOIA.[54]  Plaintiff's  December 12, 2018 appeal included a copy of the letter written by Dr, Patrick Lenz on June 13, 2007 accepting the position of co-executor to the Will of Harry S. Stonehill and an October 15, 2018 letter from Dr. Lenz to the undersigned counsel confirming that the Stonehill Estate "is still active in Switzerland." The IRS never responded to the December 12, 2018, appeal. In this proceeding, the IRS has not asserted the same privacy claims that were asserted as a basis for denying Mrs. Stonehill's FOIA requests which claimed that Mrs. Stonehill does not have authority to represent the estate of her husband or to access documents related to the discovery of the 94 Boxes of Stonehill documents or the subsequent loss of Boxes 17 and 83.

## II.    THIS PROCEEDING

On December 6, 2019, Plaintiff initiated this lawsuit, seeking declaratory and injunctive relief requiring the IRS to produce all non-exempt records responsive to Plaintiff's September 28, 2018, FOIA request. (Dkt. 1.)  On August 21, 2020, the Defendants moved to dismiss Mrs. Stonehill's action on the ground that Plaintiff's suit "is barred under the doctrine of res judicata." (Dtk.11-1) The Plaintiff filed a Memorandum in Opposition of the Plaintiff's Motion to Dismiss on October 16, 2020 (Dkt. 13) and the Defendant filed a Reply brief in support of the Motion to Dismiss on November 20, 2020. (Dkt. 16) On March 22, 2021, the Court entered its Memorandum Opinion and Order denying the Defendant's Motion to Dismiss finding that "the doctrine of res judicata does not bar the disclosure of records under FOIA simply because those records relate to earlier litigation." (Dkt. 17 at 6)

---

[54] Letter from R. Heggestad to IRS Appeals (December 12, 2018), Complaint Ex. 10 (c).

The Court ordered the parties to file a joint status report on or before April 13, 2021 "addressing **(1) any document still to be produced pursuant to FOIA; (2) any anticipated schedule for processing and producing any such documents; and (3) any substantive areas of disagreement between the parties.** The Court set an initial scheduling conference for April 20, 2021. *See* March 24, 2021 MINUTE ORDER. The Defendant filed its answer on April 5, 2021. Dkt. 18. On April 13, 2021, the IRS reported that it had identified three potential locations to search for responsive records and that it was committed to release any responsive documents in its possession that were responsive to the McLean 2014 FOIA request, to the extent the records were not exempt under 5 U.S.C. sec. 552(b). Joint Status Report. Dkt. 19 at 1. In response, the Plaintiff requested that the Court set a schedule to expedite the search and review process for all documents responsive to her September 28, 2018 FOIA request. Dkt. 19 at p. 4. The IRS committed to informing Plaintiff's counsel by May 28, 2021, about the status of its ongoing search, including whether it had located any records potentially responsive to the request. Dkt. 19 at p. 4. On April 17, 2021, **the Court ordered that the parties file a further joint status report on or before May 17, 2021, proposing a production schedule for records found in the two locations that could be searched during the pandemic.** (See April 17, 2021 MINUTE ORDER). On May 17, 2021, **the IRS informed the Court that it "would review the electronic files for responsiveness" and would "release all non-exempt, responsive records on a rolling basis beginning July 1, 2021 and continuing to at least September 1, 2021**. Joint Status Report Dkt. 20 at p. 2.

Following the May 17, 2021, joint status report, the Court ordered the Parties to "file a further joint status report on or before September 15, 2021, or on or before fourteen days **after the IRS notifies Plaintiff that it has finalized its search and release of all responsive records,** whichever is earlier." May 18, 2021, MINUTE ORDER. On September 15, 2021, the IRS

reported that it had "made three rolling release of records on July 1, 2021, July 29, 2021 and

August 31, 2021 and that it believed additional searches were necessary to demonstrate that that

it had adequately searched for potentially responsive records." Joint Status Report Dkt 22 at par.

3. On September 16, 2021, the Court Ordered that after the November1, 2021, Status Report,

"the Parties shall file joint status reports every thirty days after November 1, 2021, **until all**

**nonexempt, responsive records have been released**." (See September 16, 2021 MINUTE

ORDER)

On November 1, 2021, the IRS reported that (1) it had completed the search of the

relevant Associate Chief Counsel offices of the Chief Counsel that assisted with the 1998 FOIA

request and the duplicate 2001 FOIA request and **all responsive, non-exempt records had been**

**released to plaintiff as of October 29, 2021**; (2) the IRS had conducted a search for the

administrative FOIA processing files with respect to the 2014 and 2018 FOIA requests, located

the potentially responsive records, and **released all nonexempt responsive records**; (3) the IRS

continued to search for records potentially maintained by the Disclosure Office related to the

1998 and 2001 FOIA requests and the files had not been located; and (4) the IRS had completed

its search for records in collaboration with the WNRC and **all responsive non-exempt records**

**were released to plaintiff as of October 29, 2021**. Joint Status Report Dkt. 23. On December 1,

2021, the IRS reported it had completed its search for documents. Joint Status Report, Dkt. 24.

On December 5, 2021, the Court ordered the parties to file a joint status report with a

proposed schedule for further proceedings, if any, on or before December 15, 2021. December 6,

2021, MINUTE ORDER. On December 15, 2021, the parties proposed a schedule for the IRS

production of a Vaughn Index and any declarations substantiating its search, a pre-motion notice

requesting a pre-motion conference and plaintiff's response to the IRS pre-motion notice. The

Court approved the parties proposed schedule in its December 17, 2021, MINUTE ORDER.

On February 18, 2022, the IRS provided plaintiff with two declarations from the IRS regarding the exemptions claimed in *Stonehill v. IRS*. On March 31, 2022, the IRS provided Plaintiff with its "search declaration." On April 7, 2022, the IRS filed its Pre-Motion Conference Statement. Dkt. 26. The IRS reported that it had located 1,093 pages of responsive records; 119 pages were released in full, 65 pages were withheld in part, and 909 pages were withheld in full. The IRS requested that the Court dismiss the case because it had conducted an adequate search and had withheld only documents exempt under 5 U.S.C. Section 552(b). Alternatively, the IRS proposed a briefing schedule for issues that required resolution on summary judgment. Id.

On April 15, 2022, Mrs. Stonehill reported that of the 909 pages withheld in full, only two documents were identified by date and only 7 records were identified by author or recipient(s). *See* Pre-Motion Conference Statement. Dkt. 28. A Motion to Compel a Vaughn Index, (Dtc. 27) was filed simultaneously with the Pre-Motion Conference Statement, requesting the Court to require the IRS to file a Vaughn Index (in addition to the Declarations) "to assure a proper justification for IRS claims of deliberative process privilege, the attorney work product doctrine and attorney client privilege to provide Mrs. Stonehill with sufficient detain to oppose an IRS motion for summary judgment or to prepare a cross motion for summary judgment."

Following the submission of pre-motion statements, the Court issued a Minute Order requiring the parties to appear for a pre-motion conference on May 10, 2022. (April 19, 2022). One day prior to the conference, the Court issued a Minute Order requiring the IRS to file the two declarations which described material withheld from the responsive records and the basis for withholding such material under applicable FOIA exemptions. May 9, 2022, Minute Order. During the Pre-motion conference held on May 10, 2022, plaintiff's counsel agreed to reduce the scope of summary judgment briefing by not challenging 773 pages of records that the IRS had described as relating to draft Vaughn Indexes and privilege logs. The Court offered to review the

remaining withheld documents with counsel present and informed the parties that a decision on the applicability of the deliberate process privilege, the attorney work product doctrine and the attorney client privilege could be reached with input from both parties and without requiring summary judgment briefing. **On May 19, 2022, the defendant rejected the Plaintiff's proposal to accept the Court's offer of a meeting to review withheld material that was still in dispute.**

The day following the Pre-motion conference, the Court ordered the parties to file a joint status report on May 20, 2022, and also denied the Plaintiff's motion for a Vaughn Index as "premature." May 10, 2022, Minute Entry. In its May 20, 2022, Joint Status Report, the Parties informed the Court that the parties had exchanged information in an attempt to narrow the issues and requested additional time to reach an agreement; the parties proposed that a Joint Status Report be filed on May 27, 2022, which would include a proposal for any further proceedings that might be necessary to resolve the case. Dtk. 33. On May 27, 2022, the IRS suggested that the Court issue an order (a) directing plaintiff file with the Court by June 10, 2022, a Notice listing either the documents or pages of records plaintiff still maintained were at issue and which exemptions the plaintiff was challenging and adopt the IRS proposed briefing schedule for summary judgment Dtk. 34. In its May 27, 2022, Status Report, the Plaintiff objected to the IRS proposal that Plaintiff be required to provide the reasons why the documents withheld remain at issue, until the defendant filed a summary judgment motion. Dtk. 35. On June 22, 2022, the Court ordered that:

(1) the IRS provide the Plaintiff with the date, author, and recipient of each of the 23 documents being withheld in full on or before June 24, 2022;

(2) the Plaintiff indicate to Defendant which of the withholdings from the 23 records it is challenging on or before July 1, 2022, but Plaintiff need not provide its reasons, and if Plaintiff cannot decide whether to challenge the withholding without first seeing Defendant's motion she can so indicate;

(3) Defendant shall file its motion for summary judgment, along with a <u>detailed</u> Vaughn index on or before July 8, 2022; (Plaintiff's opposition and cross motion shall be filed on or before August 5, 2022, and

(4) Plaintiff shall file a reply to any brief in opposition to a cross motion on or before September 16, 2022. See June 22, 2022, Minute Order.

On June 24,2022, the IRS provided Mrs. Stonehill with the date, author, and recipient of each of the 23 documents being withheld in full. Dtk. 36.  On June 30, 2022, Mrs. Stonehill informed the IRS that only two of the 23 documents withheld in full were responsive to her 2018 FOIA request, an August 3, 2015, email (p. 167 and the Draft Declaration of Richard Fultz (May 2005) pp. 524-529. With the exception of the first document, Mrs. Stonehill reported that the only remaining documents which were disputed in part, related to the Defendant's assertion of the Deliberative Process Privilege to withhold documents which had *also* been withheld in full based on the Work Product Privilege. Mrs. Stonehill informed the IRS that she would not dispute the Defendant's assertion of Work Product Privilege with respect to these disputed documents. Dtk. 37-1.

The vast majority of the documents withheld in this proceeding relate to government Vaughn Index's and Privilege Logs prepared by IRS and Tax Division attorneys in the Rule 60(b)(6) litigation and the IRS FOIA litigation. These several hundred pages of documents were neither responsive nor relevant to Mrs. Stonehill's FOIA request which sought information about the IRS discovery of the 8 boxes of Stonehill documents in the IRS Associate Chief Counsel's Office, the discovery of the 8 boxes of Stonehill documents in the WNRC or the loss of Boxes 17 and 83. A significant number of the unredacted documents or partially unredacted documents released to Mrs. Stonehill after the complaint was filed were directly responsive to her FOIA request.

### III.   LEGAL STANDARD

The Freedom of Information Act's (FOIA) attorneys' fee provision exists to remove the incentive for agencies to deny FOIA requests based on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation rather than on the merits of exemption claims. 5 U.S.C.A. § 552(a)(4)(E). *American Oversight v. U.S. Department of Justice and Federal Burau of Investigation*, 375 F. Supp. 3d 50, 65 (D.D.C.2019)  The test for an award of fees "has two components: eligibility and entitlement." *Gerhard v. Fed. Bureau of Prisons*, 258 F.Supp.3d 159, 165 (D.D.C. 2017). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation omitted). "If so, the [C]ourt proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees." *Id.* To determine whether the eligible plaintiff is entitled to an award, the Court balances four factors. *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). It weighs the public benefit of the disclosure, the nature of the plaintiff's interest in the records, whether any commercial benefits were derived from the request, and the reasonableness of the agency's initial withholding. *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008).

A plaintiff must satisfy" both prongs of the test to obtain attorneys' fees under FOIA. *Brayton*  641 F.3d at 524 (citing *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). Moreover, if the plaintiff is eligible for and entitled to fees, he must demonstrate that the award he seeks is "reasonable." 5 U.S.C. § 522(a)(4)(E)(i); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 197 F.Supp.3d 290, 293–94 (D.D.C. 2016). As discussed below, Mrs. Stonehill is eligible and entitled to attorney's fees and costs. The attached

Declaration by the undersigned counsel, also demonstrates that the fees and costs claimed by Mrs. Stonehill are reasonable.

## ARGUMENT

## I.   MRS. STONEHILL IS ELIGIBLE FOR AN AWARD OF ATTORNEY'S FEES BECAUSE SHE HAS SUBSTANTIALLY PREVAILED

FOIA's fee-shifting provision makes plaintiffs who have "substantially prevailed" in a FOIA suit eligible to recover costs and fees. *See* 5 U.S.C. § 552(a)(4)(E); *Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C.Cir.2010). There are two ways a plaintiff can show it has "substantially prevailed" and is therefore eligible for an award under FOIA. First, a plaintiff substantially prevails when its suit causes a "voluntary or unilateral change in position by the agency." *Id.* § 552(a)(4)(E)(ii)(II). *American Oversight,* 375 F. Supp. at 61. Under the catalyst theory, a plaintiff can obtain an award of costs and fees under Freedom of Information Act (FOIA) if the institution and prosecution of the litigation caused the agency to release the documents obtained during the pendency of the litigation. 5 U.S.C.A. § 552(a)(4)(E)(ii)(II). *Davis* 610 F.3d at 752 (D.C. Cir. 2010). A plaintiff also substantially prevails when it secures "a judicial order, or an enforceable written agreement or consent decree." *See American Oversight*, 375 F. Supp at 62 (where "benefit... sought" includes the production of records, judicial order requiring disclosure can qualify as "relief" sufficient for a party to "substantially prevail" under 5 U.S.C. § 552(a)(4)(E)(ii)… D.C. Circuit has at least thrice held that judicial order requiring disclosure renders plaintiff eligible for a fee award."); *See also Davy v. CIA*, 456 F.3d 162, 166 (D.C. Cir. 2006) ("*Davy I* ") (quoting *Edmonds v. FBI*, 417 F.3d 1319, 1322–23 (D.C. Cir. 2005) ) (judicial order approach—applies where there is judicially sanctioned change in the legal relationship between the parties.) Mrs. Stonehill prevailed in this litigation under both the

catalyst theory and because she secured a judicial order which required the IRS to comply with a

release schedule ordered by this Court.

### A. Mrs. Stonehill prevailed because her prosecution of this action was necessary to obtain the information requested in her September 18, 2018, FOIA request

On October 19, 2018, IRS Disclosure Manager Sharisse Tompkins ("Tompkins") issued

a final response denying Mrs. Stonehill's September 28, 2018 FOIA.[55]  On December 12, 2018,

the undersigned counsel appealed Tompkin's final response.[56] It is undisputed that Mrs.

Stonehill's December 12, 2018 appeal included a copy of the letter written by Dr, Patrick Lenz

on June 13, 2007 accepting the position of co-executor to the Will of Harry S. Stonehill and a

October 15, 2018 letter from Dr. Lenz to the undersigned counsel confirming that the Stonehill

Estate "is still active in Switzerland."  The IRS has admitted that it never responded to Plaintiff's

December 12, 2018, FOIA appeal. Mrs. Stonehill filed this action one year after filing her FOIA

appeal, because this litigation was necessary in order for Mrs. Stonehill to obtain the information

requested from the IRS after her September 18, 2018, FOIA request was denied. Following the

filing of this litigation, the IRS ultimately released the documents discussed herein that were

responsive to her FOIA request.

There is a causal nexus between this action and the IRS release of the information

requested by Mrs. Stonehill (*See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588

(D.C.Cir.1981))[57] and the    IRS decision to release responsive documents represents a unilateral

change from the IRS denial of Mrs. Stonehill's FOIA request. *N.Y.C. Apparel F.Z.E. v. U.S.*

*Customs and Border Prot. Bureau*, 563 F.Supp.2d 217, 221 (D.D.C. 2008) (voluntary change in

position—codifies so-called "catalyst theory," which asks whether "litigation substantially

---

[55] Complaint Ex. 10(b).
[56] Letter from R. Heggestad to IRS Appeals (December 12, 2018), Complaint Ex. 10 (c).\
[57] The purpose of this provision was to reestablish the once-prevailing catalyst theory as a method of recovery in FOIA cases. *Davis*, 610 F.3d at 752.

caused the requested records to be released."). Mrs. Stonehill prevailed in this litigation because the documents released to Mrs. Stonehill could not have been obtained without this litigation.

**B.** **Mrs. Stonehill Prevailed because the Court Ordered the IRS to produce non-exempt documents relevant to her FOIA Request**

Mrs. Stonehill is entitled to relief because she obtained relief through a judicial order. 5 U.S.C.A. § 552(a)(4)(E)(ii). A Freedom of Information Act (FOIA) plaintiff can show that it has substantially prevailed, as required for an award of fees, via relief obtained through a judicial order by showing that the court issued an order adopting an existing production schedule. 5 U.S.C.A. § 552(a)(4)(E)(ii).. "A court order that changes the legal relationship between the parties is one that requires a party 'to do what the law required–something that it had theretofore been unwilling to do.' " *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health*, 130 F.Supp.3d 156, 162 (D.D.C. 2015) (quoting *Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 196 (D.C. Cir. 2007) ).

On April 17, 2021, after the Court had denied the IRS Motion to Dismiss Mrs. Stonehill's lawsuit, the Court ordered that the parties file a further joint status report on or before May 17, 2021, proposing a production schedule for release of records found in the two locations that could be searched during the pandemic. (See April 17, 2021, MINUTE ORDER). On May 17, 2021, the IRS informed the Court that it "would review the electronic files for responsiveness" and would "release all non-exempt, responsive records on a rolling basis beginning July 1, 2021 and continuing to at least September 1, 2021. Joint Status Report Dkt. 20 at p. 2. (Regardless of who proposed FOIA production schedule, once order has been adopted by court requiring agency to release documents, legal relationship between the parties changes such that FOIA plaintiff substantially prevails, as required for an award of fees. *American Oversight*, 375 F. Supp.3d. at 63.  5 U.S.C.A. § 552(a)(4)(E)(ii))  Following the joint status report, the Court ordered the

Parties to "file a further joint status report on or before September 15, 2021, **or on or before fourteen days after the IRS notifies Plaintiff that it has finalized its search and release of all responsive records**, whichever is earlier" (See May 18, 2021, MINUTE ORDER).  On September 15, 2021, the IRS reported that it had "made three rolling release of records on July 1, 2021, July 29, 2021 and August 31, 2021 and that it believed additional searches were necessary to demonstrate that that it had adequately searched for potentially responsive records."  Joint Status Report Dkt 22 par. 3.

On September 16, 2021, the Court Ordered that after the November1, 2021, Status Report, "the Parties shall file joint status reports every thirty days after November 1, 2021, **until all nonexempt, responsive records have been released**." (See September 16, 2021 MINUTE ORDER)  In response to the Court's Order, on November 1, 2021, the IRS reported that (1) it had completed the search of the relevant Associate Chief Counsel offices of the Chief Counsel that assisted with the 1998 FOIA request and the duplicate 2001 FOIA request and **all responsive, non-exempt records had been released to plaintiff as of October 29, 2021**; (2) the IRS had conducted a search for the administrative FOIA processing files with respect to the 2014 and 2018 FOIA requests, located the potentially responsive records, and **released all nonexempt responsive records**; (3) the IRS continued to search for records potentially maintained by the Disclosure Office related to the 1998 and 2001 FOIA requests and the files had not been located; and (4) the IRS had completed its search for records in collaboration with the WNRC and **all responsive non-exempt records were released to plaintiff as of October 29, 2021**. Joint Status Report Dkt. 23. On December 1, 2021, the IRS reported it had completed its search for documents. Joint Status Report, Dkt. 24.

Prior to the Court's orders denying the IRS motion to dismiss and its subsequent orders requiring the parties to file status reports until all nonexempt records had been produced, the IRS

had not been willing to release any responsive documents to Mrs. Stonehill's FOIA request. *See Davy v. Central Intelligence Agency*,  456 F.3d at 165. (plaintiff can substantially prevail based on court order even if  defendant had already agreed to do that which the court orders  and "[e]ven though the parties arrived at a mutually acceptable agreement, ... the order memorializing the agreement created the necessary judicial *imprimatur* for [P]laintiff[ ] to be a prevailing party.") *Campaign for Responsible Trans.*, 511 F.3d at 197   *Id.  see also Elec. Privacy Info. Ctr. v. FBI*, 72 F.Supp.3d 338, 344-45 (D.D.C. 2014) (finding that the plaintiff substantially prevailed "by obtaining production of responsive documents pursuant to the Court's ... Order, which approved the parties' stipulated production date"). The D.C. Circuit has explained even though parties previously consented to the schedule, the court's order constituted a "judicially sanctioned change in the legal relationship between the parties." *Campaign for Responsible Transplantation v. Food & Drug Admin.*, 511 F.3d 187, 197 (D.C. Cir. 2007).

      C.   **Mrs. Stonehill prevailed because she obtained the documents that revealed Boxes 17 and 83 were never lost and are currently at their designated locations at the WNRC.**

    A Freedom of Information Act (FOIA) plaintiff may be considered a prevailing party for purposes of attorneys' fees if it succeeds on any significant issue in litigation that achieves some of the benefit the plaintiff sought in bringing the suit. 5 U.S.C.A. § 552(a)(4)(E)(ii); *Edmonds v. FBI*, 417 F.3d 1319, 1326–27 (D.C. Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) ). The records released by the IRS satisfied the purpose of Mrs. Stonehill's lawsuit which was to obtain information about what happened to the "lost" IRS Stonehill boxes and whether the IRS played a role in that loss. The released documents provided Mrs. Stonehill with significant information about the "lost" boxes:

1. the circumstances surrounding the purported loss of Stonehill Boxes 17 and 83 and the fact that the boxes had never been lost.

2. the documents released revealed that the IRS claims that boxes 17 and 83, were lost made in 2014 emails internally and during the IRS Inspector General's Office investigation were false;

3. The Excel Sheet provided to the IRS by the Director of the WNRC and released to Mrs. Stonehill confirms the dates the IRS returned the lost boxes17 and 83 to the WNRC between 2009 and 2013;

4. The IRS communications with the WNRC Director, described in the Second Newsome Declaration, explained the purpose of the Excel sheet which confirmed that Boxes 17 and 83 have never been lost and are currently in their designated locations at the WNRC; and

5. The email correspondence released, describes the IRS attempt to disguise the fact that the Boxes had not been lost e.g.: (1) returning groups of boxes over multiple years; (2) repackaging two boxes into 4 boxes; and (3) replacing two boxes, which were not returned to the records center in 2013 with the 2 lost boxes.

Mrs. Stonehill obtained the information requested in her September 18, 2018, FOIA and she has substantially prevailed in this litigation.

## II.   MRS. STONEHILL IS ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND COSTS.

In determining whether Mrs. Stonehill is entitled to attorneys' fees, the touchstone of this inquiry is whether an attorneys' fee award is necessary to implement the FOIA. *Trotter v. Center for Medicare and Medicaid Services,* 2022 WL 951377 at 2 (D.D.C. 2022) *See Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)). Four factors guide this inquiry: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records ; and (4) the reasonableness of the agency's withholding.' " *Judicial Watch, Inc. v. FBI*, 522 F.3d 364 at 371 (D.C. Cir. 2008). The weighing of the factors is a matter of district court discretion, and no one factor of the test is dispositive. *Reyes v. National Archives and Records*

31

*Administration*, 356 F.Supp.3d 155 at 163-164 (D.D.C. 2018). *See Edelman v. Security and Exchange Commission*, 356 F. Supp.3d 97, 104 (D.D.C. 2019) "courts must remain cognizant of the purposes of FOIA's attorney fee provision" when considering these factors, citing *Wadelton v. Dep't of State*, No. 13-CV-412, 2018 WL 4705793, at *4 (D.D.C. Sept. 30, 2018). The provision exists to "remove the incentive" for agencies to deny FOIA requests based on "the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation" rather than on "the merits of exemption claims." *Edelman*, 356 F. Supp at 104 citing *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977).

### A. <u>There is a public benefit derived from the documents sought by Mrs. Stonehill</u>

The public benefit factor for determining whether a plaintiff is entitled to attorney's fees under the Freedom of Information Act (FOIA) requires a court to consider whether the requester's victory is likely to add to the fund of information that citizens may use in making vital political choices. 5 U.S.C.A. § 552(a)(4)(E). *Edelman* 356 F. Supp. 3d at 105, citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). As discussed below, the Stonehill case has met widespread and exceptional media interest and the information sought involves possible questions about the government's integrity that affect public confidence. *See Reyes v. National Archives and Records Administration*, 356 F.Supp.3d 155 at 164 (D.D.C. 2018) (Plaintiff's FOIA request inured to the public benefit as it related to a matter of public concern which "has met widespread and exceptional media interest and the information sought involves possible questions about the government's integrity that affect the public confidence.") As noted by this Court, Mrs. Stonehill "is attempting to use FOIA to obtain records related to how the IRS responded to her husband's earlier FOIA requests and to his request for discovery in the Rule

60(b) litigation." This information "is about how an agency discharges its obligations under FOIA'S." Memorandum Opinion and Order, 03/22/21, Document 17 at 4.

The original FOIA request filed in 2014 on behalf of Mrs. Stonehill was filed by Bethany McLean, a prominent American journalist and contributing editor for *Vanity Fair* magazine. She is known for her writing on the Enron scandal and the 2008 financial crisis. Ms. Mclean attempted to obtain information about the Stonehill case through FOIA requests from several government agencies. After three years of unexplained delays by the IRS, and following the denial of her appeal on August 28, 2017, McLean did not pursue her investigation because it would have required FOIA litigation.

Subsequently, following the undersigned's filing of FOIA litigation on behalf of Mrs. Stonehill, three different journalists have attempted to obtain information about the ongoing FOIA litigation and the background of the Government's investigation and prosecution of Stonehill, beginning in 1962 with illegal raids based on faulty search warrants.[58]  Following the Court's decision in a related FOIA case, *Stonehill v. Department of Justice Tax Division*, (02/10/22) Civ. 1:19-cv-03770 (D.D.C) (which also rejected the Tax Division's *res judicata* argument), the undersigned counsel was contacted on February 15, 2022 by Peter Reilly ("Reilly"), a tax writer for Forbes. Reilly sought information about the recent decisions and the related FOIA litigation.[59] He was "intrigued" by the Stonehill FOIA cases and wanted to discuss the "overall goals" or "purpose" of the litigation. On February 23, 2022, Reilly's story about the litigation was published online, ***U.S. v. Harry Stonehill---America's Jarndyce v. Jarndyce.***[60]

---

[58] *See* Heggestad Declaration Attachment A
[59] *See* Heggestad Declaration Attachment A
[60] Exhibit 5

His story concludes with a discussion of an exhibit to the FOIA complaint which was written by

the IRS Service Representative in Manila, Robert Chandler:

> The memo is dated January 10, 1962, almost two months before the raid. It goes into some detail on what a bad guy Embassy officials think Stonehill is:
>
> > ....*it appears that Stonehill's individual influence may be sufficient to undermine the entire American effort and perhaps destroy democracy here at a cost to the United States which will be immeasurable and much beyond the hundreds of millions in aid programs and loans.*
>
> It goes on at some length but near the end we have
>
> > ....*several elements in the Embassy are already thoroughly familiar with the informant's information and many them are aware that the best, if not the only, attack which can be made on Stonehill is through the IRS.*
>
> Chandler goes on to indicate that voluntary compliance in the Far East is very unsatisfactory and that a publicized case would be helpful in creating an effective enforcement image. **There is something wrong with having tax enforcement being a tool that is used for other ends, which is pretty clearly what was going on in Stonehill's case. It is neither the first nor last time that it has happened…**

Reilly's interest in writing about the Stonehill FOIA litigation is in part about the Government's

use of the IRS and other Federal agencies as a means of achieving political goals, a topic of great

public interest for many years. [61]

On May 25, 2001, the undersigned counsel was also contacted by Lee Ferran, a former

ABC news reporter who also wanted to discuss the FOIA litigation:

> I'm writing because I stumbled across the current FOIA case filed on behalf of Harry Stonehill's estate and as I looked more into the details of the case, the more extraordinary it seemed.

---

[61] On March 30, 2021, the undersigned counsel was also contacted by Frederick Lee, a reporter for TaxAnaylists, who also sought information for a story about the Stonehill case after reading the FOIA complaints filed on behalf of Mrs. Stonehill. See Heggestad Declaration at -----

The undersigned counsel met with Mr. Ferran on May 26, 2001, in an "off the record" interview.[62]

There is a great public interest in the documents that were sought and released in this proceeding because they show that the Government has used the FOIA process as a means of preventing or delaying the release of information about government misconduct in FOIA litigation and in related proceedings. The information contained in the boxes at issue in this litigation was originally sought by Stonehill 24 years ago. The IRS prevented its release initially by claiming only 5 Stonehill documents could be located. After Stonehill's counsel learned about the existence of 94 boxes of Stonehill documents kept at the Associate Chief Counsel's Office and at the Washington National Records Center in 2001, the IRS claimed for the next 21 years that two of the most important Stonehill boxes had been lost. On March 31, 2022, the IRS finally acknowledged that the boxes were never lost and are in fact in their designated locations at the WNRC.

The records released by the IRS also include emails confirming that the Tax Division attorney in the Rule 60(b) litigation, Charles Duffy ("Duffy"), removed documents from the 94 boxes "by deciding on his own that certain documents are classified."[63] The boxes were sent back to the records center by the IRS, except for the "documents that were pulled out by Duffy and were in his possession as of August 12, 2013.[64] Although Duffy claimed that the documents were "later classified" by the CIA, Duffy did not have the authority to classify the documents at the time he removed them from IRS custody and it is unclear whether the Tax Division or the IRS ever identified those documents to Stonehill or to the Rule 60(b) District Court during its *ex-*

---

[62] See Heggestad Declaration Attachment A.
[63] STONOO290, 299-301.  Exhibit 1 (i) at 301
[64] Exhibit 1(i) at 299

*parte* meeting with Tax Division attorneys and representatives of the CIA to review documents withheld or redacted based on claims of national security. This is a further example of the government's use of the FOIA as a litigation tool in other proceedings.

The IRS delays in producing responsive documents, resulted in an unnecessary appeal to the Ninth Circuit in the Rule 60(b) proceeding and prevented Mr. Stonehill, who died in 2002, from ever knowing the true extent of government misconduct detailed in the Ninth Circuits 2011 decision. *United States v. Stonehill*, 650 Fed. 3d 415 (9th Cir. 2011). The IRS used the FOIA as a tool (as described by Mr. Reilly) for other ends.

## B. There is no commercial benefit to Mrs. Stonehill and Mrs. Stonehill's interest in the records could not have been pursued absent the pro bono representation of counsel.

The commercial benefit to the plaintiff and the plaintiff's interest in the records sought are "often combined ... into a single factor assessing whether a plaintiff 'ha[d] sufficient private incentive to seek disclosure' of the documents without expecting to be compensated." *McKinley v. Fed, Hous. Fin. Agency*, 739 F.3d 707 at 711 (D.C. Cir. 2014) (quoting *Davy*, 550 F.3d at 1160). *Edelman*, 356 F. Supp.3d 97 at 106. If the plaintiff may obtain a "commercial benefit" or has some other "personal interest in pursuing litigation, 'an award of fees is generally inappropriate' because the claimant has sufficient motivation to bring suit without the promise of attorneys' fees." *Nat'l Sec. Counselors v. Central Intelligence Agency*, 2017 WL 5633091, at *13 (D.D.C. Nov. 21, 2017).

In this FOIA litigation and other FOIA litigation, the undersigned counsel has represented Mrs. Stonehill pro bono. Granting attorneys' fees in these circumstances, and where Mrs. Stonehill's request benefits others, would further the purposes of FOIA. *See Williams v. FBI*, 17 F.Supp.2d 6, 9 (D.D.C. 1997) (granting attorneys' fees in part because "an award of fees would serve the larger public purpose of encouraging service on the Civil Pro Bono Counsel

Panel"). *See also Reyes v, National Archives and Records Administration*, 356 F.Supp.3d at 166

(D.D.C. 2018) (because counsel represented plaintiff pro bono in both veterans' benefits appeal

and FOIA action Court concludes counsel may not have had sufficient incentive to bring FOIA

action without expectation of recouping attorneys' fees if successful). In determining if a plaintiff

is entitled to an attorneys' fees, a district court should "always keep in mind the basic policy of

the FOIA to encourage the maximum feasible public access to government information and ... to

facilitate citizen access to the courts to vindicate their statutory rights." *Church of Scientology of*

*California v. Harris*, 653 F.2d 584, 590 (D.C. Cir. 1981) (quoting *Nationwide Bldg.*

*Maintenance, Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977) ).

Mrs. Stonehill's husband, Harry Stonehill, was economically devastated following the

underlying tax proceedings between 1966 and 1985. Mrs. Stonehill is elderly and in poor health

and resides with her son in Spain with extremely limited resources. She did not and does not

have the ability fund either the Rule 60(b) litigation or the ongoing FOIA litigation. The Rule

60(b) litigation ended in 2011 and there is no financial reward if Mrs. Stonehill succeeds in this

litigation. Her primary interest is to obtain information about the government's investigation and

prosecution of her husband which in 1962 to further a political goal.[65]

### C.  The IRS did not have a reasonable basis for withholding Documents requested by Mrs. Stonehill.

The fourth factor considers whether the agency's position had a reasonable basis in law

and asks whether the agency was recalcitrant in its opposition to a valid claim or otherwise

engaged in obdurate behavior. *Reyes v, National Archives and Records Administration*, 356

F.Supp.3d at 166 ( D.D.C. 2018) citing *Davy*, 550 F.3d at 1162 (quoting *LaSalle Extension*

*University v. F.T.C.*, 627 F.2d 481, 486 (D.C. Cir. 1980) ). For purposes of determining whether

---

[65] Whether the Rule 60(b) could ever be reopened based on fraud on the Rule 60(b) court, is now an open issue, but only because of the staggering recent revelations.

a requester is entitled to attorney's fees under the Freedom of Information Act (FOIA), the question is not whether the plaintiff prevailed or whether the plaintiff's suit was a catalyst for the agency's release of records; instead, the question is whether the agency's initial decision to withhold records and whether its position in the litigation were reasonable, even if the court ultimately ordered disclosure. 5 U.S.C.A. § 552(a)(4)(E)(ii). *Davy*, 550 F. 3d at 1163; *See also Negley v. FBI*, 818 F.Supp.2d 69, 76 (D.D.C. 2011). The agency bears the burden of showing "that it had [a] colorable or reasonable basis for not disclosing the material" at issue. *Edelman*, 356 F. Supp. at 108, citing  *Davy*, 550 F.3d at 1163; *see also Am. Immigration Council v. U.S. Dep't of Homeland Security*, 82 F.Supp.3d 396, 407 (D.D.C. 2015); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F.Supp.2d 225, 237 (D.D.C. 2012).

### 1.  <u>The Records Requested by Mrs. Stonehill were not tax records that required a privacy release.</u>

Plaintiff's FOIA request filed on September 18, 2018 sought "all records and documents, including electronic correspondence, related to storage, transfer and review of documents concerning Harry S. Stonehill…("Stonehill documents")" located at the IRS Chief Counsel's Office and the IRS storage facility…during…January 1, 1998 thru January 1, 2003, including:

1) All records and correspondence discussing or related to the discovery and review of the 8 boxes of Stonehill documents in the IRS Chief Counsel's office (safe or vault) in 2001 ….;

2) All records and correspondence discussing or related to the discovery, transfer and review of the 86 boxes of Stonehill documents in the Federal Records Center in Suitland, Maryland in 2000-2002 …;

3) All logs and/or records containing names of any representative of the IRS or the Tax Division who had access to or reviewed the 8 boxes of Stonehill documents in the IRS Chief Counsel's office, safe or vault in 2001 or the 86 boxes of IRS Stonehill documents discovered in 2000-2003 in the IRS storage facility in Suitland, Maryland;

4)      All records or correspondence related to the original numbering and subsequent re-numbering and inspection of the 86 boxes of Stonehill documents stored at the Federal Records Center in Suitland Maryland during 2001 and 2002;

5)      All records or correspondence relating to the discovery that Boxes 17 and 83 were missing from the Federal Records Center….

6)      All documents describing the numbering and the contents of the 8 boxes of Stonehill documents in the Chief Counsel's office (safe or vault) and the 86 boxes of Stonehill documents in the Federal Records Center in Suitland, Maryland; and

7)      All records or correspondence related to the transfer of the 86 boxes of Stonehill documents stored at the Federal Records Center in Suitland Maryland to the Tax Division and/or the IRS.

On October 19, 2018, IRS Disclosure Manager Sharisse Tompkins ("Tompkins") issued a final response denying Mrs. Stonehill's September 28, 2018, FOIA because the records sought were confidential tax records requiring an authorization verifying Mrs. Stonehill's right to access the records of her husband.

> Tax records are confidential and may not be disclosed unless specifically authorized by law. The information you provided does not provide adequate verification of your right to access the records of Mr. Stonehill.[66]

Mrs. Stonehill's FOIA request did not seek records the IRS maintained about Mr. Stonehill and its investigation of him. Mrs. Stonehill sought records "the IRS created in the process of storing, searching and producing the records that were at issue in the earlier litigation." March 22, 2021, *Memorandum Opinion and Order, Stonehill v. IRS*, Document 17. There is no legal basis for the IRS claim that these records are confidential tax records which required an authorization from Mrs. Stonehill who was the beneficiary and the co-executor and co-administrator of her husband's Estate.

---

[66] Complaint  Ex. 10(b)

2. **Stonehill's FOIA September 28, 2018 FOIA request included a
Certification of Identity, a Privacy Release, a Power of Attorney, Tax
Information Authorization and a Notice Concerning Fiduciary
Relationship**[67]

Tompkins October 19, 2018 letter denying the FOIA request stated that:

> Unfortunately, there was no information provided to support the statements made on
> Form 56, Notice Concerning Fiduciary Relationship. Please note the executor/fiduciary
> relationship has a finite term. Once the estate/probate is closed, the authorities and
> relationship terminate. Since the authority to re-disclose as provided by Form 56 is not
> established, the authority to receive tax information as provided by Form 8821, Tax
> Information Authorization, cannot be honored.[68]

These documents were provided to the IRS and they were referenced and attached to

Mrs. Stonehill's September 18, 2018 FOIA request.[69]

3. **The IRS Claim that the Stonehill Estate had been closed was Inaccurate**

On December 12, 2018, the undersigned counsel appealed Tompkin's final response on

behalf of Mrs. Stonehill:[70]

> My request for documents relating to the IRS storage, inspection and loss of Stonehill
> files was not a request for "tax information" as claimed by Ms. Tompkins and it did not
> require an authorization from Mrs. Stonehill. Ms. Tomkins has not cited any exemption
> or exclusion which would prevent release of the requested information and as a member
> of the public, I am entitled to this information, regardless of whether Mrs. Stonehill's
> "executor/fiduciary relationship has terminated. However, under any circumstance, Mrs.
> Stonehill is the co-executor and beneficiary of Mr. Stonehill's estate, the Stonehill estate
> has not been closed and she has an absolute right to request the documents described in
> the September 28, 2018 FOIA request.

The 2018 FOIA appeal included a copy of a letter written by Dr. Patrick Lenz on June 13, 2007

accepting the position of co-executor of the Will of Harry S. Stonehill and an October 15, 2018

---

[67] Complaint par. 95. Answer par. 95. Although the September 28, 2018 FOIA request did "not involve
any privacy rights concerning Stonehill's tax returns or tax return information, under 26 U.S.C. 1603,"
Stonehill's FOIA request included documents which authorized Mrs. Stonehill's representatives to have
access to the documents that had been requested.
[68] Letter from S. Tompkins to R. Heggestad (October 19, 2018), Complaint Ex. 10(b).
[69] Complaint, Ex. 10(a).
[70] Letter from R. Heggestad to IRS Appeals (December 12, 2018), Complaint Ex. 10 (c).

letter from Dr. Lenz to the undersigned counsel confirming the Stonhill Estate "is still active in Switzerland." The IRS did not respond to Mrs. Stonehill's appeal. More than a year after the appeal was filed, Mrs. Stonehill filed this litigation on December 6, 2019.

There was no basis for denying Mrs. Stonehill's September 18, 2018 FOIA filed on behalf of Mrs. Stonehill or the almost identical FOIA request filed by Bethany McLean in 2014. The Stonehill Estate has never been closed in Switzerland (Complaint Ex. 7a-7f)[71] and Mrs. Stonehill, who is the beneficiary, coexecutor and co administrator of her husband's estate, is entitled to have access to the records she requested.

The IRS was recalcitrant and engaged in obdurate behavior in its denial of a valid FOIA request filed on behalf of Mrs. Stonehill by McLean in 2014 and by the undersigned counsel in 2018. *See Fenster v. Brown,* 617 F. 2d 740, 744(D.C. Cir. 1979) ((agency must show that it has not been recalcitrant in opposition to valid claim or engaged in obdurate behavior). In response to the initial FOIA request filed in 2014, the IRS requested 11 extensions over a period of 3 years without raising any issue regarding Mrs. Stonehill's authority until it denied the appeal on August 28, 2017; it did not even bother to respond to Mrs. Stonehill's appeal of the IRS October 19, 2018 final decision denying her FOIA for more than a year, necessitating the filing of this litigation.

Finally, whether the IRS denial of her FOIA request was reasonable or had no colorable basis under the law weighs heavily in Mrs. Stonehill's favor because the IRS's "nondisclosure was designed to avoid embarrassment and to thwart Mrs. Stonehill from discovering extreme government misconduct during the Rule 60(b) proceeding and in the previous FOIA litigation.

---

[71] It is undisputed that Mrs. Stonehill's December 12, 2018 appeal included a copy of the letter written by Dr, Patrick Lenz on June 13, 2007 accepting the position of co-executor to the Will of Harry S. Stonehill and a October 15, 2018 letter from Dr. Lenz to the undersigned counsel confirming that the Stonehill Estate "is still active in Switzerland."

*Blue v. Bureau of Prisons,* 570 F.2d 529 at 534 ((5th Cir. 1978) cited by *Springer v. United States,* 2022 WL 494379 at 5 (D.C.N.D. Texas 01/28/2022). The IRS responses to her FOIA requests were intended to prevent disclosure of the fact that Boxes 17 and 83, which were requested in the Rule 60(b) proceeding and in the IRS FOIA litigation, were not lost and that the IRS affidavits submitted in those proceedings were false.

## III.   MRS. STONEHILL'S ATTORNEY'S FEES ARE REASONABLE

This litigation was filed on December 6, 2019 and has continued for almost three years. Although a considerable amount of time expended by the undersigned counsel could have been avoided if the IRS had been forthright about the existence of the boxes of Stonehill documents that it had falsely claimed for 21 years had been lost, that information was not provided to Mrs. Stonehill's counsel until March 31, 2022, in the last paragraphs of the Second Newsome Declaration (par. 71-76, pp's. 18-19). Newsome received this information from the Director of the WNRC in August 2021. The IRS also made the production of records unnecessarily lengthy and complicated by producing 750 pages out of the 1093 released in totally redacted form. Those records were not responsive to Mrs. Stonehill's FOIA request because they consisted primarily of privilege logs and Vaughn indexes which had no relationship to how the 96 boxes were discovered by the IRS or the loss of Boxes 17 and 83. The format of the IRS declarations made it almost impossible and extraordinarily time consuming for the undersigned counsel to determine the merits for the attorney work product and  deliberative process privileges asserted as the basis for redacted the several hundred pages of documents in their entirety. After the Court ordered the IRS to provide the basic identifying information about these documents, the undersigned counsel withdrew its objections to all of the documents withheld based on claims of work product privilege.

The IRS motion to dismiss this complaint based on res judicata required a very detailed and comprehensive opposition brief which required the review of the underlying records in the Rule 60(b) proceeding and the previous IRS FOIA litigation. The significant time required to file a 37 page opposition brief was necessary to prevent the dismissal of the Mrs. Stonehill's complaint. Mrs. Stonehill's efforts were successful; the Court denied the IRS Motion to Dismiss on 3/22/21.

As summarized in the attached Declaration, the undersigned counsel graduated from the University of Iowa Law school and was admitted to the Iowa Bar on 6/16/72, fifty (50) years ago. Immediately following law school, he obtained a MA degree in finance, during which time he was retained by the Department of Justice as a consultant to the Law Enforcement Assistance Administration (LEAA) in Washington, D.C. Subsequently, he became an associate at Casey, Scott and Canfield and later became a named partner of Casey, Scott, Canfield and Heggestad. In 1997 he founded Heggestad & Weiss P.C. In January 2005, he became of counsel to Ross Dixon and Bell in Washington, D.C. which was merged with Troutman Sanders (now Troutman Pepper) on January 6, 2009. He retired from Troutman Sanders in 2018 but has continued to practice law in Washington, D.C.

He was admitted to the Iowa bar on June 16, 1972, the D.C. Bar on July 14, 1978, the U.S. Supreme Court on February 21, 1984, the District Court for the District of Columbia on March 5, 1984, the Court of Appeals for the DC Circuit on February 29, 1989, Ninth Circuit Court of Appeals on March 3, 1991, and the 4th Circuit Court of Appeals on September 25, 1992. His litigation experience is described on the Troutman Pepper website as follows:

> Bob had extensive civil litigation experience in state and federal courts throughout the country. His practice involved advising clients on a wide variety of matters, and he was retained by major corporations, corporate executives, trade associations, and some of the nation's largest insurance companies in disputes involving commercial contracts,

business torts, government regulation issues, employment practices and insurance coverage issues.[72]

The hourly rate charged by the undersigned counsel at the time of his retirement from Troutman Sanders was $750 hour; he has continued to charge the $750/hour rate for work performed on behalf of corporate clients. His rate is consistent with the LSI Laffey Matrix Rates published for 2021-2022, which set a rate of $895/hr up to $919/hr for work performed between 2018 and 6/01/-5/03/22 of $919/hr for attorneys who have been out of law school for 20+ years. Based on the undersigned's experience, the $750/hr proposed billing rate represents fair market rates.

Because the undersigned counsel is representing Mrs. Stonehill pro bono in this proceeding, Mrs. Stonehill is not formally billed for his time. His time records for the work in this litigation are attached to the Heggestad Declaration filed as Attachment A-2.  The hours attributed to time spent on the preparation of this motion are included as part of the request for attorney's fees. Mrs. Stonehill's success on the merits in this action is a factor that is relevant to determining the reasonableness of the fee award. ("plaintiff's overall success on the merits also must be considered in determining the reasonableness of a fee award." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 369 (D.C. Cir. 2006) 5 U.S.C.A. § 552(a)(4)(E).)

Mrs. Stonehill seeks reasonable attorney's fees in the amount of $225,337 which includes the preparation of this motion (with a 30% discount) and $300 in costs. It "is settled in this circuit" that "[h]ours reasonably devoted to a request for fees are compensable." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985). Plaintiff's counsel has also included the time expended to review released documents. ("released documents [were] being reviewed to evaluate the sufficiency of the release [and] the propriety of a specific

---

[72] Declaration of Robert E. Heggestad, Attachment A-1.

withholding ..., such document review time is properly included in [the] FOIA attorney's fees award." *Elec. Privacy Info. Ctr.*, 80 F.Supp.3d at 159.)

**CONCLUSION**

As set forth above, Plaintiff, Pauline Stonehill, is eligible and entitled to attorney's fees and costs, incurred for work between May 30, 2019 and September 1, 2022. This litigation which has lasted almost 3 years, has been unnecessarily complicated and time consuming, in part because of the IRS failure to be forthcoming with the Plaintiff and with the Court. Mrs. Stonehill respectfully requests that this Court grant her motion for reasonable attorney's fees and costs.

Dated: 09/01/2022

Respectfully submitted.

/s/ Robert E. Heggestad

Robert E. Heggestad
D.C. Bar No. 953380
1701 Pennsylvania Ave., NW
Second Floor
Washington, DC 20006
(202) 733-6726
robert@reheggestad.com